IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| ROBERT A. BLACK, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 3:22-CV-19 (CAR) |
| | : | |
| JAMES MADDEROM, JAMIE | : | |
| COWLING, and JOHN DOES 1-5, | : | |
| | : | |
| Defendants. | : | |
| | : | |

### ORDER ON DEFENDANTS' MOTION TO DISMISS

Currently before the Court is Defendant James Madderom's and Defendant Jamie Cowling's (collectively "Defendants") Motion to Dismiss Plaintiff Robert Black's ("Black") First Amended Verified Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). For the reasons explained below, the Court finds that Georgia's Long Arm Statute permits jurisdiction over Madderom, but the Court lacks jurisdiction over Cowling. Thus, Defendants' Motion [Doc. 2] is **DENIED** as to Madderom and **GRANTED** as to Cowling. The Parties' Joint Motion for Clarification [Doc. 17] is **MOOT**.

### BACKGROUND

Black originally filed this action in the Superior Court of Green County, Georgia seeking access to Mammoth Nation LLC's ("Mammoth") financial records and

1

accounting, attorney's fees, and damages for breach of fiduciary duty, breach of partnership, fraud, and civil conspiracy.[1] Defendants filed a timely notice of removal[2] and now move to dismiss Black's claims for lack of personal jurisdiction.[3] Defendants' Motion is now ripe for ruling.[4]

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), a plaintiff's complaint is subject to dismissal if there is a lack of personal jurisdiction over the defendant. The presence or absence of personal jurisdiction is a question of law.[5] "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."[6] A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict."[7]

A party may challenge personal jurisdiction on either facial or factual grounds.[8] A facial attack requires the court to examine whether the plaintiff has sufficiently alleged a

---

[1] Superior Court Complaint, [Doc. 1-2]; Plaintiff's First Verified Amended Complaint, [Doc. 4].
[2] Notice of Removal, Doc. 1.
[3] Defendants' Motion to Dismiss, [Doc. 2]; Defendants' Reply to Response, [Doc. 11].
[4] *See generally*, Joint Motion for Clarification, [Doc. 17] ("both parties have treated Defendants' initial Motion to Dismiss and subsequent briefing as applicable to Plaintiff's First Verified Amended Complaint, and, as a result, both parties feel the motion is ripe for ruling.").
[5] *Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010); *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009).
[6] *Diamond Crystal,* 593 F.3d at 1257 (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)); *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000).
[7] *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).
[8] *Carmichael v. Kellogg, Brown & Root Svcs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) (citations omitted).

basis for personal jurisdiction in the complaint, and the allegations in the complaint are taken as true for the purpose of the motion.[9] A factual attack challenges the existence of jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.[10]

Here, Defendants raise a factual attack on personal jurisdiction. When a non-resident defendant challenges jurisdiction, and supports the challenge with affidavit evidence, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction.[11] The plaintiff must "substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint."[12] Where "the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff."[13] Although a verified complaint may be treated as an affidavit, the Eleventh Circuit "has consistently held that conclusory allegations [in an affidavit] without specific supporting facts have no probative value."[14]

## FACTUAL FINDINGS

The record before the Court establishes the following facts. Black is a citizen of

---

[9] *Id.*

[10] *Id.*

[11] *Diamond Crystal*, 593 F.3d at 1257.

[12] *Polskie Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986).

[13] *Mandara*, 916 F.2d at 1514.

[14] *Jacoby v. Baldwin Cty.*, 666 F. App'x 759, 762 (11th Cir. 2016) (citing *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys.*, 941 F.2d 1428, 1444 n.35 (11th Cir. 1991); *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

Georgia, and Madderom and Cowling are citizens of Wisconsin.[15] On or about September 19, 2020, Defendants registered Mammoth as a Delaware limited liability company with Cowling as its sole member.[16] Mammoth is an online membership-based shopping platform which "features American owned and operated businesses, while also openly supporting politically conservative candidates and causes."[17] Black alleges he and Madderom are 50-50 owners of Mammoth, and Madderom and Cowling conspired to defraud Black of his ownership stake in Mammoth. While the chain of events leading to the breakdown of Black and Madderom's business relationship is unclear, Black contends Madderom and Cowling conspired to defraud Black of his ownership stake in Mammoth.

The record contains multiple emails sent between Black and Madderom discussing Mammoth. Before its registration as a Delaware LLC, Madderom identified Mammoth as a component of Oconee Marketing Group ("OMG"). OMG is a Georgia limited liability company which controls multiple online-based shopping platforms.[18] In an email to Black, Madderom stated, "OMG is comprised us [sic] Mammoth, The Hispanic Store, and 60Plus," and solicited Black's input on potential compensation and ownership structures for Mammoth.[19] The signature block under Madderom's name in

---

[15] Plaintiff's First Verified Amended Complaint, [Doc. 4] at p. 1, 2.
[16] *Id*. at p. 5.
[17] Plaintiff's First Verified Amended Complaint, [Doc. 4] at p. 3.
[18] *Id*. at p.3
[19] Email from Madderom to Black on April 8, 2019, [Doc. 4-1] at p. 2.

the April 8, 2019 email includes: "Oconee Marketing Group, LLC," a link to OMG's website, OMG's logo, and contact information.[20]

Almost a year later, Madderom sent Black an email which included a document titled "Oconee Marketing Group, LLC Corporate Overview." The document lists Mammoth Nation under OMG's current projects and states, "Mammoth Nation, an OMG owned brand, will be launched and marketed independently."[21] Additional emails provided to the Court show Black and Madderom discussing Mammoth's plans, strategy, and financial information—including a PowerPoint presentation for potential investors.[22]

While the chain of events leading to the breakdown in Black and Madderom's business relationship is unclear, it appears Madderom was aware of Black's concerns about being "frozen out" of Mammoth and responded:

> I've put a lot of thought into how we got so disconnected lately. My recent lack of communication led you to believe that we were trying to run away with the company. No[t] true. Since you were unable or unwilling to persuade your friends to invest, we had to pick up the ball and run with it. I guess keeping you in the informed on every detail wasn't high on my priority list, since you haven't played a daily role in the new business. It's difficult to keep you in the loop because so much is constantly changing. Mostly you just managed the year end accounting, and that's not my focus right now.[23]

---

[20] *Id.*
[21] Email from Madderom to Black on March 11, 2020, [Doc. 4-3] at p. 4.
[22] *See generally*, Emails from Madderom to Black, [Docs. 4-3; 4-4; 4-5; 11-6].
[23] Email from Madderom to Black on September 28, 2020, [Doc. 4-2] at p. 3.

In the same email, Madderom addressed Mammoth's structure and ownership. Madderom stated he was unsure if "we should run [Mammoth] as a dba of AireComm, OMG, or if it should stand on its own. My guess is, it should stand on its own."[24] He noted that "[f]or years, you and I have talked about a 50/50 split of the company until the old debt was resolved and a 75/25 split in my favor going forward after that. I never really strayed from that original premise, but so many things have changed."[25] Madderom acknowledged Black's concern about the ownership of Mammoth and stated, "[w]e're still playing this day to day, so instead of overthinking it, I just kept going. I also understand why you want 50/50. It's because you didn't want to lose control with so much of your own money exposed. I get it."[26] Madderom suggested he and Black enter into a memorandum of understanding to outline expectations and avoid future misunderstandings.[27]

Black responded, "[m]y recommendation is to keep Mammoth, Hispanic Store, and Zavingo under OMG as it stands now. We originally set up OMG to house these projects, and any others down the road," and noted "this keeps all ownership at 50-50 for you and I until the debt is paid off."[28]

Cowling was not included on any of the email correspondence provided to the

---

[24] *Id*.
[25] *Id*. at p. 4
[26] *Id*.
[27] *Id*.
[28] Email from Black to Madderom, September 28, 2020, [Doc. 4-2] at p. 2-3.

6

Court. While her exact role is unclear, the record does establish the following facts surrounding Cowling's involvement. Cowling has never met or spoken to Black.[29] While it is clear Madderom and Black discussed the possibility of compensating Cowling for her services,[30] the record demonstrates Cowling's time was never formally invoiced and she never received the compensation Black and Madderom previously discussed. Cowling's taxable income was $26,605 for 2019 and $0 for 2020.[31]

But Cowling was involved in the payment or repayment of expenses related to Mammoth. In 2019 and 2020, Madderom used a credit card listed jointly in his and AireComm LLC's name for expenses related to Mammoth. Cowling directly paid over $65,000 towards the credit card's balance.[32] In an email to Black, Madderom characterized Cowling's payments as a loan.[33] When Madderom did not have funds available to pay off the $3,416.74 credit card balance in March 2020, Black agreed to pay the balance if he was repaid.[34] Cowling voluntarily reimbursed Black on Madderom's

---

[29] Declarations of Jamie Cowling, [Docs. 2-3, 11-8].

[30] Email form Madderom to Black on March 30, 2022, [Doc. 4-5] at p. 3 ("I've also attached the expenses that have gone into creating Mammoth Nation to date. Jamie was willing to put $10K/month for her work, but that's far below her normal contract rates so I asked her to change to $15K. Still a great deal. We don't need to cover all her back pay immediately, but we do need to start paying her a salary. She's listed as Project Manager/Business Development.").

[31] Declaration of Jamie Cowling, [Doc. 11-8].

[32] Declaration of James Madderom, [Doc. 11-4; 11-5; 11-6; 11-7].

[33] *See* June 19, 2020 email from Madderom to Black, [Doc. 4-4] at p. 2 ("Jamie paid $50,798.91 for AMEX in 2019. Total she paid in 2019 is $65,797.30. She did not claim any of our business on her taxes, as that's a loan.")

[34] Declaration of James Madderom, [Doc. 11-4].

7

behalf on March 25, 2020.[35]

## DISCUSSION

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution."[36] The Eleventh Circuit has held this analysis requires trial courts to "engage in a separate, literal application of the Georgia long-arm statute in addition to a due process inquiry in deciding whether personal jurisdiction exists over a nonresident defendant."[37]

Georgia's long arm statute permits personal jurisdiction over a nonresident if the nonresident, "in person or through an agent . . . (1) Transacts any business within this state; [or] (3) Commits a tortious injury in [Georgia] caused by an act or omission outside of [Georgia] if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in [Georgia]."[38] A nonresident defendant "transacts any business" in Georgia when he or she has "purposefully done some act or consummated some transaction in" Georgia, although the defendant "need not physically enter the

---

[35] Declaration of Jamie Cowling, [Doc. 11-8]; Exhibit Check [Doc. 11-9].
[36] *United Techs*, 556 F.3d at 1274.
[37] *Diamond Crystal,* 593 F.3d at 1254 (conforming the Eleventh Circuit's rule with the Supreme Court of Georgia's decision in *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, Iowa*, 279 Ga. 672 (Ga. 2005)).
[38] O.C.G.A. § 9-10-91.

state."[39] A court should "examine all of a nonresident's tangible and intangible conduct and ask whether it can fairly be said that the nonresident has transacted any business within Georgia."[40]

"The 'minimum contacts' required to confer personal jurisdiction over a nonresident may not be merely 'random,' 'fortuitous,' or 'attenuated.' Instead, in order for a Georgia court to exercise jurisdiction over a nonresident based on 'transacting business,' it is necessary that purposeful acts must have been performed by the defendant to tie it to the State."[41]

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'"[42] "The heart of this protection is fair warning--the Due Process Clause requires 'that the defendant's conduct and connection with the forum State [be] such that he should reasonably anticipate being haled into court there.'"[43] "Therefore, states may exercise jurisdiction over only those who have established 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'"[44]

---

[39] *Diamond Crystal*, 593 F.3d at 1249, 1264 (quoting *Robertson v. CRI, Inc.*, 267 Ga. App. 757 (2004)).
[40] *Id*.
[41] *Home Depot Supply, Inc. v. Hunter Mgmt. LLC*, 289 Ga. App. 286, 289 (2008).
[42] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985).
[43] *Diamond Crystal*, 593 F.3d at 1267 (11th Cir. 2010) (quoting *Burger King*, 471 U.S. at 474).
[44] *Diamond Crystal*, 593 F.3d at 1267 *(citing Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414; *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

A. <u>Jurisdiction over Defendant Madderom</u>

Black argues personal jurisdiction is proper as Madderom has (1) transacted business within the state and (2) committed tortious acts through his involvement in the alleged conspiracy with Cowling to appropriate the Mammoth concept and defraud Black.

1. O.C.G.A. § 9-10-91(1)

The first prong of the Georgia long-arm statute confers personal jurisdiction over any nonresident, in person or through an agent, who "[t]ransacts any business" within Georgia.[45] The Eleventh Circuit has instructed that "courts in this circuit construing the statute literally will have to delineate the precise contours of the '[t]ransacts any business within this state' requirement of O.C.G.A. § 9-10-91(1) according to the facts of each case."[46] The Georgia Court of Appeals provided further clarification in holding:

> Jurisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.[47]

Madderom is a citizen of Wisconsin, but he resided in Georgia from 1995 until 2016. While the exact ownership and organization of Mammoth is unclear without a formal operating agreement, this lawsuit undoubtedly arises from or is connected to

---

[45] O.C.G.A. § 9-10-91(1).
[46] *Diamond Crystal,* 593 F.3d at 1263.
[47] Declarations of Jamie Cowling, [Docs. 2-3, 11-8].

10

Madderom's actions taken on behalf of Mammoth and OMG.

Emails between Madderom and Black demonstrate that Madderom regularly engaged with Black—a Georgia resident—and OMG—a Georgia limited liability company—on important matters related to Mammoth. In weighing a foreign company's conduct, the Eleventh Circuit has concluded jurisdiction was proper where a company's representatives visited a domestic factory, discussed the manufacturing process, suggested ways to improve manufacturing, and suggested entering into an exclusive manufacturing agreement.[48] Here, the record demonstrates Madderom and Black discussed ownership, equity, potential investors, finances, liabilities, salaries, business plans, strategy, and shared marketing and investment materials. These conversations were not minor, random, fortuitous, or attenuated. Madderom solicited Black's opinions on important business decisions of magnitude for Mammoth which weighs in favor or jurisdiction.

Madderom's attempts to distance himself and Mammoth Nation, LLC from OMG and Black are factually unsupported by the record. In an email sent from Madderom to Black, Madderom stated "OMG is comprised us [sic] Mammoth, the Hispanic Store, and 60Plus."[49] Madderom's signature block in that same email included his name, phone numbers, "Oconee Marketing Group, LLC," as well as OMG's logo and

---

[48] *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 931 (11th Cir. 2007).
[49] *Id*. at p. 4; *see also* Exhibit A [Doc. 4-1]

11

website.[50] In these communications, Madderom held himself out to be a representative of OMG and explicitly identified Mammoth as a component of OMG.

Furthermore, in an email to Black, Madderom stated that "[f]or years, [Black and Madderom] have talked about a 50/50 split of the company until the old debt was resolved and a 75/25 split in my favor going forward after that."[51] Notably, Madderom's email acknowledging discussions about Black's ownership stake in Mammoth was sent on September 28, 2020—nine days **after** Mammoth's registration as an LLC in Delaware. Madderom's actions and conduct undoubtedly establish sufficient minimum contacts with Georgia for the Court to exercise personal jurisdiction.

2. O.C.G.A. § 9-10-91(3)

A defendant who commits a tortious injury in Georgia caused by an act or omission outside of Georgia may be subject to personal jurisdiction under O.C.G.A. § 9-10-91(3). "Read literally, subsection (3) limits the exercise of jurisdiction over defendants who commit tortious acts outside of the state, which cause injury in the state, to a tortfeasor who 'regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.'"[52] For the same reasons discussed above, the record

---

[50] Amended Complaint, at p. 4; *see also* Exhibit A [Doc. 4-1].
[51] Email from Madderom to Black on September 28, 2020, [Doc. 4-2] at p. 3.
[52] *Sprint Nextel Corp. v. Ace Wholesale, Inc.*, No. 1:12-cv-02902-JEC, 2014 U.S. Dist. LEXIS 21598, at *20 (N.D. Ga. Feb. 20, 2014) (citing O.C.G.A. § 9-10-91(3)).

12

demonstrates that Madderom engaged in a persistent course of conduct, solicited business, and has sufficient minimum contacts with Georgia. Black has carried his burden of establishing a prima facia case surrounding Madderom's alleged tortious acts directed at a Black—a Georgia resident. Thus, jurisdiction under O.C.G.A. § 9-10-91(3) is likewise proper.

3. Due Process

Having concluded personal jurisdiction is authorized under the long arm statute, the Court must be satisfied that the exercise of that jurisdiction comports with due process. This inquiry requires the Court to determine "(1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'"[53]

For the reasons discussed, Black's claims arise out of or relate to Madderom's contacts with the state of Georgia. Madderom personally availed himself of the laws and protections in Georgia through his work with Black and on behalf of OMG. Finally, the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

---

[53] *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013).

13

Thus, the Court concludes that Madderom's contacts with Georgia meet the requirements for the exercise of personal jurisdiction under Georgia law and doing so would not violate due process. Defendants' Motion to Dismiss Black's claims against Madderom is **DENIED**.

B. <u>Jurisdiction over Defendant Cowling</u>

Black argues personal jurisdiction is proper because (1) Cowling has transacted business within the state and (2) committed tortious acts through her involvement in the alleged conspiracy to appropriate the Mammoth concept and defraud Black. Specifically, Black contends Cowling's intentional act of taking control of Mammoth as its sole registered member is sufficient to exercise jurisdiction, and Cowling's contacts with Georgia are sufficient for the Court to exercise jurisdiction.[54] The Court disagrees.

"In evaluating whether a defendant could reasonably expect to be haled into court in a particular forum, courts examine [a] defendant's contacts with the state, focusing on whether (1) [the] defendant has done some act to avail himself of the law of the forum state; (2) the claim is related to those acts; and (3) the exercise of jurisdiction is reasonable, that is, it does not violate notions of fair play and substantial justice."[55]

1. O.C.G.A. § 9-10-91(1) and O.C.G.A. § 9-10-91(3)

Cowling's contacts with Georgia are attenuated at best. Cowling resides in Green

---

[54] Plaintiff's Reply, Doc. 5 at p. 6.
[55] *Beasley v. Beasley*, 260 Ga. 419, 421(1990).

Bay, is a citizen of Wisconsin, owns no property in Georgia, and has not traveled to Georgia in over two years.[56] While defendants "need not physically enter the state," Courts must consider "all of a nonresident's tangible and intangible conduct and ask whether it can fairly be said that the nonresident has transacted any business within Georgia."[57]

Black's contention that Cowling transacted business in Georgia is unpersuasive. "For a Georgia court to exercise jurisdiction over a nonresident based on 'transacting business,' it is necessary that purposeful acts must have been performed by the defendant to tie it to the State."[58] Cowling issued the approximately $65,000 in loans to Mammoth, as well as the check to repay Black, from Wisconsin. In his Amended Complaint, Black asserts a claim for civil conspiracy against Cowling. Black's claim does not arise out of Cowling's loans to Mammoth or reimbursement of Black. Furthermore, Cowling has not visited Georgia in over two years and has never met or communicated with Black. Because Cowling's contacts with the state appear to be random, fortuitous, or attenuated, O.C.G.A. § 9-10-91(1) cannot provide personal jurisdiction over Cowling.

Furthermore, even if Cowling caused injuries in Georgia by out-of-state tortious acts, the record does not indicate that she does regular business in Georgia, engages in any persistent course of conduct in Georgia, or derives substantial revenue from goods

---

[56] Declarations of Jamie Cowling, [Docs. 2-3, 11-8].
[57] *Diamond Crystal*, 593 F.3d at 1264.
[58] *Home Depot*, 289 Ga. App. 286, 289.

15

used or services rendered in Georgia. Cowling's loans to Mammoth, a singular check written to reimburse Black on behalf of Madderom, and discussions—which Cowling herself was not a party to—about the possibility of adding Cowling to Mammoth's payroll are far too episodic and isolated to amount to regular business or a persistent course of conduct.[59] Thus, even if Cowling committed torts that caused injuries in Georgia, her action do not satisfy the systematic contacts with the state that subsection (3) requires.[60]

2. Conspiracy Jurisdiction

The Georgia Court of Appeals has "rejected a 'conspiracy theory' of jurisdiction where the plaintiff tried to rely on imputed acts to bypass the requirements of due process."[61] While "the in-state acts of a resident co-conspirator may be imputed to a non-resident co-conspirator to satisfy jurisdictional requirements under some circumstances," those circumstances require "more than mere conclusory allegations of the nonresidents' participation in a conspiracy with a resident."[62]

---

[59] *E.g., Sprint Nextel*, 2014 U.S. Dist. LEXIS 21598, at *22.

[60] *Id.* at 17-18; *See also Anderson v. Deas*, 279 Ga. App. 892, 893-94 (2006) (no persistent course of business from regular phone calls to Georgia residents); *Bradlee Mgmt. Servs., Inc. v. Cassells*, 249 Ga. 614, 615-17 (1982) (reporter mailing news tapes to Georgia television station for a news report was not engaged in persistent course of conduct); *Taeger Enters. v. Herdlein Technologies*, 213 Ga. App. 740, 747 (1994) (jurisdiction improper where foreign company representative visited domestic job site and complimented the work being done there.); *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 931 (11th Cir. 2007) (jurisdiction proper where foreign company representatives visited domestic factory, discussed the manufacturing process, suggested ways to improve manufacturing, and suggested entering into an exclusive manufacturing agreement).

[61] *Rudo v. Stubbs*, 221 Ga. App. 702, 703 (1996).

[62] *Id.* at 703-704.

Unlike in *Rudo*, Black failed to offer competent proof to substantiate his allegations that Cowling participated in the alleged conspiracy with the purpose of committing an intentional tort against Black—therefore purposefully directing her activities towards Georgia.[63] Instead, Black contends that Cowling's role as the sole registered member of Mammoth Nation, LLC "alone demonstrates that she has conspired to commit an intentional tort, fraud, against Black."[64] The Court disagrees and finds Plaintiff's assertion to be legally unsupported, devoid of factual support, and thus, lacking in probative value.[65]

The Georgia Court of Appeals further noted that even if a plaintiff's allegations are sufficient to show a conspiracy, "the bare existence of a conspiracy is not enough to support long arm jurisdiction without a further showing of a 'contact' with the forum jurisdiction."[66] For the same reasons discussed above, the Court finds the alleged conspiracy linking Madderom's acts to Cowling are too attenuated and factually unsupported to satisfy the requirements to establish jurisdiction under Georgia law.

The Court concludes that Cowling's contacts with Georgia are insufficient to meet the independent requirements established by Georgia law. Defendants' Motion to

---

[63] *Id.* at 703-704. ("We emphasize that plaintiff in this case has provided more than mere conclusory allegations of the nonresidents' participation in a conspiracy with a resident. Cf. *Cocklereece*, 157 Ga. App. at 245-246 (suggesting that controverted allegations raising "specter of a conspiracy" may not be enough.")).
[64] Black's Reply, [Doc. 16] at p. 4.
[65] *Jacoby*, 666 F. App'x at 762. ("conclusory allegations [in an affidavit] without specific supporting facts have no probative value.").
[66] *Coopers & Lybrand v. Cocklereece*, 157 Ga. App. 240, 246 (1981).

17

Dismiss Black's claims against Cowling is **GRANTED**.

## CONCLUSION

Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 2] is **DENIED** as to Defendant Madderom and **GRANTED** as to Defendant Cowling. Black's claims against Cowling are **DISMISSED without prejudice** for lack of jurisdiction. The stay on discovery is **LIFTED**, and the parties are ordered to file their proposed scheduling and discovery order within twenty-one (21) days.

**SO ORDERED**, this 30th day of August, 2022.

                                            s/ C. Ashley Royal_____
                                            C. ASHLEY ROYAL, SENIOR JUDGE
                                            UNITED STATES DISTRICT COURT